**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **RODNEY HALL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.:** _____ |
| ) | |
| **XPO LOGISTICS, LLC,** ) | |
| **d/b/a XPO LOGISTICS,** ) | **JURY DEMAND** |
| ) | |
| **Defendant.** ) | |

**COMPLAINT WITH DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiff, Rodney Hall ("Plaintiff"), by and through his undersigned

counsel, and hereby files this lawsuit against his former employer, Defendant, XPO Logistics,

LLC, doing business as XPO Logistics ("Defendant"), and states as follows:

**NATURE OF ACTION**

1.      This is an action at law arising out of discrimination by defendant-employer

motivated by race, as well as its retaliation for internal complaints and for requests for medical

leave, in the course of employment of, and termination of the Plaintiff, Rodney Hall, an African-

American male.

2.      This action states federal claims against the defendant for race discrimination

pursuant to 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. §2000e, *et seq.*, and specifically the discrimination in discipline and eventual termination

of Plaintiff's employment.

3.      This is an action by Plaintiff for compensatory and punitive damages,

declaratory, and injunctive relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

SALAS LAW FIRM, P.A.

2000e, *et seq*., as amended ("Title VII"), the Family and Medical Leave Act of 1993, 29 U.S.C. §

2601 *et seq*. ("FMLA"), the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §

12111 *et seq*. ("ADA"), and 42 U.S.C. §§ 1981, 1983 (collectively "§ 1981"), to redress injury

caused by Defendant's disparate treatment motivated by his race and/or and in retaliation against

his protected conduct. This is also an action for compensatory and punitive damages, declaratory,

and injunctive relief under Title VII, § 1981, the ADA, and the FMLA.

## JURISDICTION AND VENUE

4.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, Title VII, §

1981, the ADA, and the FMLA. Declaratory, injunctive, legal and equitable relief is sought

pursuant to the laws set forth above to include attorneys' fees, costs, and damages.

5.      Defendant presently, and regularly, conducts business in the City of Portsmouth,

Virginia.

6.      Defendant employs at least fifteen (15) or more employees for each working day

during each of the twenty (20) or more calendar work weeks in the relevant calendar years,

within the meaning of 42 U.S.C. § 2000e(b).

7.      Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

8.      Defendant has had over 500 employees for each working day in each of the

twenty or more calendar weeks in the current or preceding calendar year, within the meaning of

42 U.S.C. § 1981a(b)3(D).

9.      Defendant employs 50 or more employees within a 75-mile radius of the location

where Plaintiff worked.

2
SALAS LAW FIRM, P.A.

10.     Venue is proper in the Eastern District of Virginia (28 U.S.C. § 127), because Defendant does business in the Eastern District, and some or all of the acts alleged herein took place there.

11.     Defendant's principal place of business is in Portsmouth, Virginia, and one of its locations is located in the Eastern District of Virginia, 3400 Elmhurst Lane, Portsmouth, Virginia 23701 (the location where Plaintiff worked).

12.     Plaintiff currently resides in Chesapeake, Virginia.

13.     Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 2000e(f).

14.     All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

15.     On or about June 22, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Employment Commission, Charge No. 437-2020-01193. A true and correct copy of Plaintiff's charge is attached hereto as Exhibit "A".

16.     On or about October 26, 2020, the EEOC issued a Notice of Right to Sue letter to Plaintiff and suit has been commenced within ninety (90) days of receipt of the letter, a true and correct copy of which is included in Exhibit "B".

## GENERAL FACTUAL ALLEGATIONS

17.     Plaintiff is an African-American male.

18.     Plaintiff is a former employee of Defendant.

19.     Defendant is a global provider of freight transportation services.

20.     Plaintiff worked for Defendant as a truck driver.

21.     Plaintiff was hired by Defendant in or around February 2013.

22.     Plaintiff worked for Defendant in the position of truck driver until he was terminated, on or about February 15, 2020.

23.     In or around September 2019, Andrew Sikes, white male, began working as Plaintiff's immediate supervisor.

24.     Sikes's position was "Service Center Manager."

25.     In this position, Sikes was the immediate supervisor for the other drivers at the terminal, including Plaintiff, Miguel Cuffee (African-American male, former employee), Anthony Clements (African-American male, former employee), and Jerry l/n/u (white male, former employee).

26.     Prior to Sikes's arrival, Plaintiff was considered an excellent employee by Defendant and had received little to no discipline in his six-plus years of employment.

27.     Prior to Sikes's arrival, other African-American drivers were considered excellent employees by Defendant, like Mr. Cuffee, and had received little to no discipline during their employment. A true and correct copy of Mr. Cuffee's declaration, echoing Plaintiff's allegations about disparate treatment and retaliation after involving HR, and establishing that race discrimination was is attached hereto as Exhibit "C."

28.     Prior to Sikes's arrival, Mr. Cuffee had received little to no discipline from Defendant; however, after Sikes's arrival he received three written disciplines.

29.     After Sikes's arrival, Plaintiff and others African-American drivers (*e.g.* Mr. Cuffee and Mr. Clements) experienced difficulty communicating with Sikes about anything because when it came to African-American truck drivers, Sikes inexplicably and without

justification found their comments or suggestions to equate to insubordination, even though they were not.

30.     Mr. Cuffee felt "he had to walk on eggshells while Sikes was [his] supervisor." (*Id.*)

31.     Defendant's own equal employment opportunity polices contemplate a work environment of open communication between employees; however, Sikes's treatment of Plaintiff and others effectively pressured these employees that they'd better keep quiet, due to the pervasive threat of being disciplined for being "insubordinate."

32.     In late October 2019, Sikes verbally counseled Plaintiff in connection with how Plaintiff answered Sikes's questions about a particular delivery.

33.     Sikes added an email to Plaintiff's personnel file which included the statement about Plaintiff: "[he has a] terrible attitude and not very respectful."

34.      In or around December 2019, Sikes told Plaintiff "I do not like your body language, you are defensive, disrespectful and you need to change your attitude."

35.     Plaintiff disagreed with Sikes's statements, believing them to be baseless and false, and told Sikes as much.

36.     Plaintiff requested that Sikes and he bring the issue to human resources (HR), including because Plaintiff did not know where these accusations were coming from.

37.     Sikes declined Plaintiff's request, and told Plaintiff he was not going to take the issue to HR.  Sikes refused the request because of Plaintiff's race and did not refuse similar requests of Caucasian drivers.

38.     Plaintiff did not hear anything else about this issue in December from Sikes, HR, or anyone else with Defendant.

39.     On or around January 16, 2020, Plaintiff asked Sikes for time off for a medical appointment, for a cystoscopy, an invasive procedure performed by his urologist, in connection with his enlarged prostate issue.

40.     Plaintiff informed Sikes that the appointment was difficult to get scheduled and that he needed to make the appointment.

41.     Sikes told Plaintiff he did not have enough paid-time-off to attend the appointment.

42.     Plaintiff asked Sikes for the time off anyway.

43.     Sikes, visibly irritated, demanded to know whether Plaintiff would be returning to work after the procedure.

44.     Plaintiff told Sikes he did not think he would be able to return to work the day of the procedure and safely drive a truck, especially depending upon the procedure's effect on him afterward.

45.     Sikes told Plaintiff, in front of two witnesses, that he was being "insubordinate" for asking for time off for this medical appointment.

46.     Plaintiff responded, "if there is a problem, let's call HR."

47.     Sikes responded that "he ain't have time to stand and talk about it" and left Plaintiff.

48.     To Plaintiff's knowledge, Sikes never contacted HR about it.

49.     The next day, January 17th, Plaintiff reported to work and clocked-in as scheduled.

50.     Sikes pulled Plaintiff out of a safety meeting and escorted Plaintiff to his office where the HR manager, Amy Odell (white female), was present over the phone.

51.     Sikes and Odell presented Plaintiff with an "incident report" where Sikes claimed that Plaintiff was disrespectful to him.

52.     The incident report is a written discipline from Defendant.

53.     Plaintiff refused to sign without first providing a statement rebutting the report.

54.     The incident report did not provide details as to when or where this disrespect allegedly occurred, nor the substance.

55.     Plaintiff complained in his statement to Odell that "it is difficult to place my confidence in an open-door policy that is nonexistent due the level of scrutiny I've been under that has created a hostile work environment by Mr. Sikes. . . . I fear retaliation is imminent."

56.     Plaintiff complained to Odell that he should not have been disciplined for "attitude."

57.     Plaintiff complained to Odell that he felt people of color cannot speak up for themselves with Sikes without being perceived as having an attitude and/or being disciplined for complaining.

58.     Plaintiff never heard back from Odell or anyone else about what, if anything, came of this complaint, including whether there was any investigation.

59.     After complaining, Plaintiff signed and submitted a physical copy of the incident report.

60.     On February 6, 2020, Plaintiff was selected by Defendant for a drug test at Bon Secours In Motion (address: 2613 Taylor Road, Ste. 102, Chesapeake, Virginia 23321) ("Bon Secours").

61.     Plaintiff went to this Bon Secours location that day and checked in.

62.     Due to his medical condition, enlarged prostate, Plaintiff was having difficulty urinating.

63.     Plaintiff attempted to complete his sample; however, the sample amount was insufficient for the test.

64.     Bon Secours staff instructed Plaintiff to sit in the waiting room and drink water.

65.     Bon Secours staff instructed Plaintiff that he could not leave the waiting area, including to ensure a proper sample was collected, *i.e.* cannot leave the testing site mid-test because it would be considered a "refusal" to test.

66.     While waiting, Plaintiff received a phone call from a friend.

67.     While on the phone, another patient (white male, not an employee of Defendant) ("other patient") interrupted Plaintiff's phone conversation.

68.     The other patient said "can you take your fucking conversation outside? You are being a rude ass black person and we shouldn't have to listen to you talking on your phone!"

69.     An argument ensued between Plaintiff and the other patient; however, there was never any physical contact between them, only words.

70.     Soon after, the other patient was called away from the operating area by Bon Secours staff.

71.     The police arrived.

72.     Bon Secours personnel then instructed Plaintiff to go follow them to the examination room, a room by himself, and Plaintiff complied.

73.     At no time did Plaintiff have any interaction or communication with any member of the police.

74.     Plaintiff waited as instructed.

SALAS LAW FIRM, P.A.

75.     Plaintiff sat and waited, presuming he was going to complete his sample.

76.     Plaintiff told Bon Secours personnel that came to the room, repeatedly, that he wanted to complete his sample, including because he needed to do so, given his prostate condition.

77.     A few minutes passed, then Bon Secours nurse told Plaintiff that "your job stated you needed to report back to the terminal as they do not want you to complete the screening."

78.     Plaintiff asked what would happen to his sample, because he did not want to be considered a "refusal" or similar.

79.     The Bon Secours employee did not have a clear answer, and Plaintiff returned to the terminal as instructed by Defendant.

80.     When Plaintiff returned to work on February 6, 2020, Sikes told him "I was told the police were called and you were locked up. What happened?"

81.     Plaintiff told him what happened, including that Plaintiff had done nothing wrong and was not the aggressor, that "no I was not locked up."

82.     Sikes told Plaintiff that he had called HR because he "did not know what to do."

83.     Sikes then got Odell on the phone and told Plaintiff that he was "out of service," pending Defendant's investigation and the decision was effectively a suspension.

84.     On February 14, 2020, Odell called Plaintiff with Sikes on the phone, and informed Plaintiff that he was being terminated for "violation of company policy by communicating a threat."

85.     Plaintiff told them he disagreed.

86.     There was no discussion of any investigation, nor any results thereof.

87.     In March 2020, Mr. Cuffee filed an internal complaint of harassment with Defendant's HR, after Sikes followed him into the bathroom after he left a meeting, yelling "could that have waited." (Ex. C, ¶¶ 9-13).

88.     Sikes did this in front of Mr. Cuffee's peers at work, attempting to harass and embarrass him.

89.     After Mr. Cuffee complained to HR, Sikes apologized to him. (*Id.*)

90.     Mr. Cuffee thought this was the end of it, but afterward Sikes began treating him worse than before he complained. (Ex. C, ¶¶ 14-21).

91.     This included Sikes changing his trucking schedule, negatively affecting him, including by being required to be "on call" at 3 a.m. and ready to work that morning, whereas other non-African American drivers were not required to do so. (*Id.* ¶¶ 14-17).

92.     In June 2020, Sikes tasked Mr. Cuffee concerning a certain delivery, instructing Mr. Cuffee to not worry about company policy and to follow his directive to load additional goods on his truck, despite already having goods from a different customer loaded. (*Id.* ¶¶ 18-21).

93.     When Mr. Cuffee returned, Sikes said that he had violated company policy, pretending falsely that he had not instructed Mr. Cuffee to add the additional cargo. (*Id.*)

94.     These intolerable working conditions, motivated by race and in retaliation for his previous complaint, resulted in Mr. Cuffee resigning his position. (*Id.* ¶ 22).

95.     On another occasion, Mr. Clements left a meeting early to go to the bathroom.

96.     Sikes followed Mr. Clements to the bathroom.

97.     Sikes told Mr. Clements that he should have gone before the meeting.

98.     Sikes told Mr. Clements that he needed to ask Sikes's permission to go to the bathroom.

99.     Sikes did this in front of Mr. Clements's peers at work, attempting to harass and embarrass him.

100.    After this incident in the bathroom, in or around March 2020, Mr. Clements suffered an on-the-job injury and was returned to work on light-duty for approximately sixty days.

101.    When he returned to work, Sikes told Mr. Clements to perform work duties outside of his restrictions.

102.    Sikes blamed Clements for the on-the-job accident, repeatedly telling Mr. Clements it was his fault.

103.    In or around May 2020, after enduring this harassment and retaliation, Mr. Clements resigned with his two-week's notice.

104.    Instead of allowing him to continue working for the two-weeks, which he wanted to, Sikes told Mr. Clements that he did not want Mr. Clements working.

105.    Mr. Clements desired to keep working during that time; however, Sikes seemed happy to inform him that he was not welcome back.

106.    This is even though Jerry l/n/u also resigned around the same time, but was allowed by Sikes to keep working during his last two weeks.

107.    Defendant's, through its agents and managers, purported reasons for its actions towards Plaintiff, are not legitimate and are, in reality, a pretext for its unlawful discrimination and retaliation.

108.    Other employees of outside of Plaintiff's protected classes, *i.e.* non-African American persons, were treated more favorably than he including not being disciplined for similar issues (*e.g.* "insubordination" and/or "attitude"), did not receive any discipline for being late and/or did not receive any incident reports or warnings and/or received progressive discipline of a lesser nature or level than Plaintiff did.

109.    Other employees of outside of Plaintiff's protected classes, were treated more favorably than he including not being disciplined in retaliation for seeking medical leave for a serious health condition (*e.g.* did not receive an incident report like Plaintiff did on January 17, 2020 in retaliation for asking for time off for a medical procedure).

110.    Other drivers (and other similarly situated persons, *e.g.* Jerry l/n/u), outside of Plaintiff's protected classes, were treated more favorably than Plaintiff in the terms and conditions of their employment regarding discipline.

111.    Defendant has a policy or practice of retaliating against black persons who speak up about EEO issues and/or complain and/or request medical treatment, based on the fact that Mr. Cuffee complained about Sikes/discrimination and was treated differently in the terms and conditions of his employment afterward.

112.    Defendant has a policy or practice of retaliating against black persons who speak up about EEO and/or complain about them and/or request medical treatment, based on the fact that Mr. Clements suffered an on-the-job injury, filed for workers' compensation, was returned to work with restrictions, and Sikes demanded he work outside those restrictions, while blaming Mr. Clements for the injury, even though it was an accident.

113.     Plaintiff has sufficient evidence and/or will present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that his race was a motivating factor(s) for Defendant's discriminatory and retaliatory termination.

114.     Defendant is or may be liable to Plaintiff under the "cat's paw" theory of vicarious liability and, to the extent necessary, alleges that it is so liable.

### Count I – Title VII Disparate Treatment (Race) – Discipline & Termination[1]

115.     Plaintiff realleges all of the preceding paragraphs of this complaint.

116.     Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

117.     Plaintiff is a member of a protected class, a racial minority, African-American.

118.     Plaintiff was qualified for his position.

119.     Plaintiff suffered an adverse employment action(s), formal discipline on January 17, 2020, which resulted in more formal or further discipline, including termination of employment.

120.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement(s), and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, violation of company policy for communicating a threat) not resulting in termination of employment.

---

[1] To the extent necessary, Plaintiff's claims herein are pled in the alternative.

SALAS LAW FIRM, P.A.

121.    Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* other non-black drivers).

122.    Defendant's discrimination concerned one or more of the activities enumerated in Title VII.

123.    As a result of the aforementioned conduct, Defendant violated Title VII.

124.    Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

125.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

126.    Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

127.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

128.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count II – § 1981 Disparate Treatment (Race) – Discipline & Termination

129.    Plaintiff realleges and incorporates paragraphs 1-114 as if fully set forth herein.

130.     Plaintiff is a member of a protected class, a racial minority, African-American.

131.     Plaintiff was qualified for his position.

132.     Plaintiff suffered an adverse employment action(s), formal discipline on January 17, 2020, which resulted in more formal or further discipline, including termination of employment.

133.     Plaintiff was replaced by a person(s) outside of his protected class; and/or similarly situated comparator employees, including those non-black persons named in the complaint, his replacement, and other non-black comparators presently unknown, were treated more favorably than he in the terms and conditions of their employment, including not being terminated and/or having progressive discipline applied differently and more favorably to them (including regarding the false reason for termination, refusing to sign a warning) not resulting in termination of employment.

134.     Defendant intended to discriminate and did discriminate on the basis of race and/or Plaintiff's protected characteristic, black, was a motivator or motivating factor in Defendant's treatment of Plaintiff when it disciplined him and not similarly situated persons (*e.g.* other non-black drivers).

135.     Defendant's discrimination concerned one or more of the activities enumerated in 42 U.S.C. § 1981.

136.     As a result of the aforementioned conduct, Defendant violated § 1981.

137.     Any purported legitimate reason for Plaintiff's discipline resulting in termination, given by Defendant is, in reality, a pretext for unlawful discriminatory treatment.

138.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered an adverse employment action by being disciplined resulting in further discipline (termination) and was damaged.

139.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate discrimination / disparate treatment from the workplace and to prevent it from occurring.

140.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

141.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages.  At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count III – Title VII Retaliation (Failure to Investigate)

142.    Plaintiff realleges and incorporates paragraphs 1-114 as if fully set forth herein.

143.    Plaintiff has completed all necessary pre-requisites to bring his claims under Title VII.

144.    Plaintiff engaged in statutorily protected activities, asking Sikes in December 2019 that they bring the issue to human resources (HR).

145.    Plaintiff engaged in statutorily protected activities, complaining to Odell and Sikes on January 17-18, 2020 that the incident report issued to him on January 17th was due to a hostile work environment created by Sikes because of race.

146.    Plaintiff believed that his protected activity(ies) / complaint(s) would be investigated by Defendant, including because it is Plaintiff's understanding this is the appropriate response by Defendant pursuant to its own policies.

147.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint of hostile environment based on race on January 17, 2020 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for insubordination and treating him less favorably than others, terminating him after an argument at a third-party testing facility (which Defendant required he attend, knowing of his prostate issues)), and not terminating others who had complained.

148.    These adverse actions further included Defendant's decision to discipline Plaintiff for asking for time-off for a medical appointment; failure to investigate whether Sikes treated Plaintiff appropriately and/or whether any discipline or remedial EEO training should be provided to Sikes; failure to investigate whether the decision to discipline Plaintiff for seeking time-off for a medial appointment was appropriate; and his discriminatory and retaliatory termination less than three-weeks later.

149.    There is or are a causal connection(s) between Plaintiff's complaint to Sikes and Odell, and Defendant's failure to investigate as described above and its discipline (incident report) and the termination of Plaintiff less than three-weeks later.

150.    Defendant intended to retaliate and did retaliate because Plaintiff dared to suggest to Sikes in 2019 that they should go to HR and dared to request time off for medical issues which Defendant issued an "incident report."

151.    Sikes, based on what he told Plaintiff on February 6, 2020, knew that when he "didn't know what to do," about a personnel issue, that he should contact Defendant's HR; however, Sikes cherry-picked the circumstances for which he deemed it appropriate to contact HR, i.e. when Plaintiff wanted to involve HR, Sikes refused because Sikes knew he was in the wrong.

152.    As a result of the aforementioned conduct, Defendant violated Title VII.

153.    Any purported legitimate reason for non-investigating and/or its handling of Plaintiff's complaints and termination in connection therewith are, in reality, pretext(s) for unlawful retaliatory treatment.

154.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in Defendant's failure to investigate his claims (at least of failing to investigate his December and January complaints about Sikes and his request for medical leave, and instead issued an incident report/warning, and then his retaliatory termination.

155.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

156.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of disparate treatment based on his race and/or that the violations of his rights were continuing in nature by Defendant.

157.    As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count IV – Title VII Retaliation (Termination)

158.    Plaintiff realleges and incorporates paragraphs 1-114 as if fully set forth herein.

159.    Plaintiff has completed all necessary pre-requisites to bringing his claims under Title VII.

160.    Plaintiff engaged in statutorily protected activities, asking Sikes in December 2019 that they bring the issue to human resources (HR).

161.    Plaintiff engaged in statutorily protected activities, complaining to Odell and Sikes on January 17-18, 2020 that the incident report issued to him on January 17th was due to a hostile work environment created by Sikes based on race.

162.    Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint of hostile environment on January 17, 2020 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for insubordination and treating him less favorably than others, terminating him after an argument at a third-party testing facility (which Defendant required he attend, knowing of his prostate issues)), and not terminating others who had complained.

163.    Plaintiff suffered adverse employment action(s), Defendant's decision to not investigate what occurred at Bon Secours, and, even if there was an investigation, Defendant chose not to involve Plaintiff and/or afford him any consideration to his story, including because it was, in reality, an effort to cover up the pretextual reasons for its termination.

164.    The temporal proximity alone is sufficient to establish the causal connection between Plaintiff's internal complaint and the adverse action.

165.    Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he

complained to Odell, by issuing a pretextual "incident report" discipline, by not conducting an investigation into his hostile environment complaint, and by terminating his employment.

166.    There is or are a causal connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

167.    Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

168.    As a result of the aforementioned conduct, Defendant violated Title VII.

169.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

170.    Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

171.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

172.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

### Count V – § 1981 Retaliation (Termination)

173.    Plaintiff realleges and incorporates paragraphs 1-114 as if fully set forth herein.

174.    Plaintiff has completed all necessary pre-requisites to bringing his claims under § 1981.

175.   Plaintiff engaged in statutorily protected activities, asking Sikes in December 2019 that they bring the issue to human resources (HR).

176.   Plaintiff engaged in statutorily protected activities, complaining to Odell and Sikes on January 17-18, 2020 that the incident report issued to him on January 17th was due to a hostile work environment created by Sikes because of race.

177.   Plaintiff suffered adverse employment actions by receiving unfair, inaccurate, and disparate discipline in December 2019 through his termination, by not starting an investigation into his internal complaint of hostile environment on January 17, 2020 and/or by not handling Plaintiff's investigation in the same manner as other investigations (including by disciplining him for insubordination and treating him less favorably than others, terminating him after an argument at a third-party testing facility (which Defendant required he attend, knowing of his prostate issues)), and not terminating others who had complained.

178.   Plaintiff suffered adverse employment action(s), Defendant's decision to not investigate what occurred at Bon Secours, and, even if there was an investigation, Defendant chose not to involve Plaintiff and/or afford him any consideration to his story, including because it was, in reality, an effort to cover up the pretextual reasons for its termination.

179.   The temporal proximity alone is sufficient to establish the causal connection between Plaintiff's internal complaint and the adverse action.

180.   Defendant damaged and retaliated against Plaintiff in the terms and conditions of his employment, by disciplining him unfairly, unjustly, inaccurately, and inconsistently after he complained to Odell, by issuing a pretextual "incident report" discipline, by not conducting an investigation into his hostile environment complaint, and by terminating his employment.

181.    There is or are a causal connection(s) between Plaintiff's complaints of disparate treatment in discipline and his termination.

182.    Any purported legitimate reason proffered by Defendant for Plaintiff's discipline and termination is, in reality, a pretext for its unlawful retaliation.

183.    As a result of the aforementioned conduct, Defendant violated § 1981.

184.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment actions in discipline and termination after he complained, resulting in his suffering injury and being damaged.

185.    Defendant has failed to comply with its statutory duty to take all reasonable, necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

186.    Plaintiff further alleges that he suffered from a hostile work environment and/or that Defendant engaged in a pattern and practice of retaliation and/or that the violations of his rights were continuing in nature by Defendant.

187.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, compensatory and punitive damages, and attorneys' fees and costs.

## Count VI – FMLA Interference

188.    Plaintiff incorporates by reference paragraphs 1-114 as if fully set forth herein.

189.    In 2019 and 2020, among other times, Defendant was an "employer" as defined in §101(4) of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(4)(A).

190.    Plaintiff was an "eligible employee" as defined of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(2).

SALAS LAW FIRM, P.A.

191.    Plaintiff engaged in a statutorily protected activity by requesting medical leave for his serious health condition (regarding his cystoscopy), and suffered an adverse employment action, termination, less than three weeks after the medical leave was requested.

192.    Defendant intimidated and expressed hostility toward Plaintiff and his medical leave, by issuing him an incident report / progressive discipline for seeking leave.

193.    Defendant, through its agents, supervisors, and employees interfered with Plaintiff's FMLA rights by disciplining him, attempting to intimidate Plaintiff from asking again for leave.

194.    Defendant denied Plaintiff a benefit or benefits to which he was entitled under the FMLA by not allowing him to take medical leave as requested in January 2020 and by intimidating him with an incident report aimed at squelching additional requests for leave and/or FMLA benefits.

195.    Defendant used Plaintiff's exercise or attempted exercise of FMLA rights as a negative factor against him.

196.    By and through its agents, supervisors, and employees, Defendant engaged in or otherwise permitted unlawful interference, discrimination, or retaliation on the basis of medical leave against Plaintiff with respect to the terms, conditions or privileges of employment.

197.    As a result of the aforementioned conduct, Defendant violated the FMLA.

198.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse employment action, termination, which was motivated by his medical leave and/or his medical leave was a substantial factor in Defendant's adverse action.

199.    Defendant has failed to comply with its statutory duty to take all reasonably necessary steps to eliminate FMLA interference from the workplace and to prevent it from

occurring, including not adhering to its own internal policies and/or not applying its policies in a uniform fashion.

200.    As a direct and proximate result of Defendant's willful discrimination and/or interference, Plaintiff has suffered damages. Plaintiff is thereby entitled to and/or seeks damages including back wages, liquidated damages, interest, and attorney's fees and costs.

### Count VII – FMLA Retaliation – Discipline & Termination

201.    Plaintiff incorporates by reference paragraphs 1-114 as if fully set forth herein.

202.    In 2019 and 2020, among other times, Defendant was an "employer" as defined in §101(4) of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(4)(A).

203.    Plaintiff was an "eligible employee" as defined of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2611(2).

204.    Plaintiff engaged in a statutorily protected activity by requesting medical leave for his serious health condition (regarding his cystoscopy), and suffered an adverse employment action, termination, less than three weeks after the medial leave was requested.

205.    Defendant, through its agents, supervisors, and employees retaliated against Plaintiff by terminating him without any consideration of his return from medical leave and/or that his serious medical condition was the impetus or cause for the need for leave.

206.    Defendant, by terminating Plaintiff, retaliated against and/or used his medical leave and/or leave request as a negative factor and/or discriminated against Plaintiff for his exercise or attempted exercise of his rights under the Family and Medical Leave Act of 1993, in violation of the anti-retaliation and antidiscrimination provisions of §105(a) of the FMLA and/or of an implied federal right to be free from retaliation for exercising rights under the FMLA.

207.    As a result of the foregoing, Defendant damaged Plaintiff and violated the FMLA, by retaliating against him for requesting FMLA medical leave concerning his serious health condition.

208.    Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

209.    As a direct and proximate result of Defendant's willful discrimination/interference and retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to back wages, liquidated damages, interest, and attorneys' fees and costs.

## Count VIII – ADA Retaliation

210.    Plaintiff incorporates by reference paragraphs 1-114 as if fully set forth herein.

211.    Plaintiff engaged in a protected activity or activities, attempting to engage in an interactive process and/or taking protected medical leave and/or the seeking of an accommodation or accommodations, including concerning unpaid leave or allowance of deviation from Defendant's attendance or paid-time-off policies.

212.    When Plaintiff requested time-off for his medical appointment, Sikes refused to allow it, while at the same time knowing that Plaintiff was entitled to unpaid leave under the FMLA and/or unpaid leave as part of the reasonable accommodation / interactive process under the ADA.

213.    Plaintiff has a disability within the meaning of the ADA (even if temporary), and/or has a record of a disability, and/or was regarded as having a disability by Defendant.

214.    Defendant, through its insurers, agents, supervisors, and employees retaliated against Plaintiff after he alerted them of his medical condition, treating Plaintiff less favorably

than other employees after a leave accommodation was requested, failed to initiate an interactive process with Plaintiff concerning whether his serious health condition could negatively affect his work (at least after his return from the operation), disciplined Plaintiff and verbally accosted Plaintiff for insubordination for asking for time off for medical leave, even though it knew of Plaintiff's prostate condition, and by terminating Plaintiff.

215.    On information and belief, there is a causal link between Plaintiff's protected activity(ies), including attempting to engage in an interactive process and opposing practices made unlawful under the ADA, and his discriminatory and retaliatory termination.

216.    As a result of the aforementioned conduct, Defendant retaliated against and damaged Plaintiff in violation of the ADA.

217.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered adverse job action in retaliation for being disabled or incurring medical bills and/or his medical leave or medical bills were a motivating factor in Defendant's adverse actions.

218.    Defendant has failed to comply with its statutory duty to take all reasonable necessary steps to eliminate retaliation from the workplace and to prevent it from occurring.

219.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered damages. At a minimum, Plaintiff is thereby entitled to compensatory and punitive damages, interest, and attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against Defendant, on the above counts, and on each of them, and further:

(a) Grant a permanent injunction enjoining Defendant its officers, successors, assigns and all persons in active concert or participation with it, from engaging in discriminatory and retaliatory practices in violation of the law, as well as appropriately fashioned equitable relief

aimed at preventing future discrimination and retaliation, including EEO sensitivity training program for supervisors like Sikes (and be monitored by the EEOC);

(b)   Award Plaintiff judgment against Defendant for compensatory damages as determined by the trier of fact;

(c)  Award Plaintiff all restitution and other damages, including pre- and post-judgment interest, for the benefits he would have received absent the retaliatory treatment;

(d)  Enter judgment for punitive damages against Defendant; and,

(e)   Award all reasonable attorneys' fees and costs incurred in connection with this action; and any other further relief as justice may require.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 25th day of January, 2021.

//s//James R. Theuer, Esq.
(VSB No. 68712)
James R. Theuer, PLLC
555 E. Main Street
Suite 1212
Norfolk, VA  23510
Tel: 757-446-8047
Fax: 757-446-8048
www.theuerlaw.com

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859
(*pro hac vice* request pending)

//s//John P. Salas, Esq.

SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593
(*pro hac vice* request pending)